IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARIA MERCEDES LEMP** | * |
| Individually and as Personal Representative of | * |
| the Estate of Duncan Socrates Lemp | * |
| 1012 Mercer Place | * |
| Frederick, Maryland 21701 | * |
| | * |
| **KASEY JEAN ROBINSON** | * |
| Individually and as Guardian of | * |
| ▆▆▆▆▆▆▆▆▆ | * |
| 1012 Mercer Place | * |
| Frederick, Maryland 21701 | * |
| | * |
| **MATTHEW LEMP** | * |
| 1012 Mercer Place | * |
| Frederick, Maryland 21701 | * |
| | * |
| Plaintiffs | * |
| | * |
| v. | * Case No.: **8:23-cv-691** |
| | * |
| **OFFICER MATTHEW MAJKRZAK** | * |
| Montgomery County Police Department | * |
| Tactical Unit | * |
| Public Safety Headquarters | * |
| 100 Edison Park Drive | * |
| Gaithersburg, Maryland 20878 | * |
| | * |
| **OFFICER JORDAN SATINSKY** | * |
| Badge #2178 | * |
| Montgomery County Police Department | * |
| Tactical Unit | * |
| Public Safety Headquarters | * |
| 100 Edison Park Drive | * |
| Gaithersburg, Maryland 20878 | * |
| | * |
| **DETECTIVE TOMASZ MACHON** | * |
| Badge #2448 | * |
| Montgomery County Police Department | * |
| Firearms Investigation Unit | * |
| Public Safety Headquarters | * |
| 100 Edison Park Drive | * |
| Gaithersburg, Maryland 20878 | * |
| | * |
| **DETECTIVE KEVIN BAXTER** | * |
| Badge #2467 | * |

| | |
|---|---|
| Montgomery County Police Department | * |
| Firearms Investigation Unit | * |
| Public Safety Headquarters | * |
| 100 Edison Park Drive | * |
| Gaithersburg, Maryland 20878 | * |
| | * |
| **CHIEF MARCUS G. JONES** | * |
| Montgomery County Police Department | * |
| Public Safety Headquarters | * |
| 100 Edison Park Drive | * |
| Gaithersburg, Maryland 20878 | * |
| | * |
| **MONTGOMERY COUNTY, MARYLAND** | * |
| A Body Corporate and Politic | * |
| Serve: Marc P. Hansen, County Attorney | * |
| 101 Monroe Street, Third Floor | * |
| Rockville, Maryland 20850 | * |
| | * |
| Defendants | * |

*************************************************************************

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

**Parties**

1. Plaintiffs are Maria Mercedes Lemp, individually and as personal representative of the Estate of Duncan Socrates Lemp; Kasey Jean Robinson, individually and as parent and guardian of ███████████, a minor; and Matthew Lemp. The defendants are Officer Matthew Majkrzak, Officer Jordan Satinsky, Detective Tomasz Machon, Officer Kevin Baxter, Chief Marcus G. Jones, and Montgomery County, Maryland, a body corporate and politic.

**Jurisdiction**

2. This action is against state and local officials under 42 U.S.C. § 1983 for the deprivation of rights, privileges, and immunities secured by the Constitution of the United States Constitution. As such, they abused their lawful authority under state law by obtaining a search warrant lacking probable cause; by entering the Lemp home without giving notice of the officer's authority and purpose where it was apparent that the life or safety of the officers would

2

not be endangered if such notice was given; and by otherwise breaking windows, exploding stun grenades and placing 21-year old Duncan Lemp in fear such that he armed himself, which was enough for a SWAT officer to shoot and kill him in seconds.

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343 and on pendent jurisdiction of this Court to entertain claims arising under state law.

**Count One – U.S. Const., Amend. IV: Unconstitutional Entry to Home, Lack of Probable Cause for Search Warrant, & Use of Excessive Force.**

4. Duncan Socrates Lemp ("Duncan"), lived at 12252 St. James Road, Potomac, Maryland with his pregnant fiancée, Kasey Jean Robinson ("Kasey"), his parents, Maria and Matthew Lemp, and his brother, Atticus Lemp, age 19. On the evening of March 11, 2020, the Lemp family celebrated the birthday of Atticus Lemp at home together. Hours later, at 4:30 a.m. on March 12, 2020, Duncan would be shot dead in his own bedroom from outside of his home by SWAT Officer Matthew Majkrzak.

5. On March 11, 2020, Detective Tomasz Machon and Detective Kevin Baxter of the Montgomery County Police Department sought and obtained a no-knock search warrant for the Lemp residence at the 12252 St. James Road address. The affidavit in support of the search warrant was a collaborative effort. In the application, Detective Machon and Officer Baxter relied upon two confidential informants who claimed to know Duncan Lemp. In February 2020, the first informant claimed that Duncan was in possession of several "illegal" firearms inside the residence on St. James Road. The informant did not say how he/she knew that the firearms were illegal, or whether Duncan knew they were illegal. She also said that he was a member of "III% Militia," which he/she described an "anti-government" group. In March 2020, the second confidential informant reported that he/she had seen Duncan in the residence on St. James Road in possession of two or three rifles and two or three handguns, and that one of the rifles was an

3

"Israeli Weapons Industries" ("IWI"). Machon's affidavit stated that he reviewed social media of Duncan posting pictures of a handgun, several pictures of rifles (rifle#1 and #2) and a video of Duncan shooting Rifle#1, the WWI, at a shooting range and a handgun in the woods. Machon's affidavit states that he viewed Duncan's profile on Mymilitia.com and identified the second rifle by a visible serial number.

6. Detective Machon's affidavit states that Rifle#1 is an IWI model TavorX 95. He claims that he confirmed that by showing a representative of IWI a picture of it. Machon states that "Tavor X95" is "banned in the State of Maryland." Machon does not offer any facts to support his conclusion. It is a demonstrably false statement in the affidavit. In fact, the TavorX95 in Duncan's possession is not illegal in the State of Maryland. Since 2015, IWI has made a Maryland-compliant Tavor X95. https://www.tactical-life.com/firearm-news/tavor-sar-maryland-compliant-model-now-available/ Thus, Detective Machon and Officer Baxter lacked probable cause to believe that Duncan was in possession of a TavorX95 rifle that was banned in Maryland, as any other reasonable police officer would be compelled to conclude.

7. As to Rifle#2, Detective Machon identified the weapon as bearing the stamp of "Engage Armament" of Rockville, Maryland. He ran the serial number, "EA0176," in the Maryland Firearms Services System which revealed that Duncan purchased the receiver for this rifle in November 2019 from Engage Armament in Rockville. He said that a firearms dealer would check the National Instant Criminal Background Check System ("NCIS"), but that it does not query juvenile criminal history. He then stated, incorrectly: "It is up to the responsibility of the purchaser to know that they are prohibited."

8. Detective Machon's affidavit refers to two cases in Duncan's juvenile history, indicating findings of delinquency for 2nd degree burglary and another for motor vehicle theft.

Detective Machon failed to conduct an appropriate investigation with regard to the first juvenile case, for if he had he would have found that that case was dismissed. On the basis of this second juvenile case, Machon's affidavit does not point to any facts to demonstrate that Duncan Lemp actually knew that the offense made his possession of a firearm illegal under Maryland Public Safety Article, § § 5-133(b) & 5-144 (a)(1), and he lacked probable cause to issue a search warrant for Duncan's residence for evidence of the crime that he illegally possessed firearms.

9. If one deletes Detective Machon's false statement that the TavorX95 rifle is banned in Maryland and the other statement that Duncan was found delinquent of committing a second-degree burglary, there is no basis for a judge could conclude that the life or safety of the executing officer of the search warrant may be endangered if the warrant is issued without a no-knock provision. Vague claims that Duncan had "antigovernment," "anti-police," or membership in Mymilitia.com do not demonstrate that he would have resisted the officers if notice was given in advance of entry to the home.

10. The warrant application described the home as a "single family house;" however, it failed to disclose that the police had reason to know that Duncan and Kasey lived in a separate, attached converted garage suite and that there were other family members living in the house. The application completely omitted that Kasey Robinson lived in the immediate space where police later opened fire on Duncan, thereby placing her and the entire Lemp family in danger. The warrant also failed to mention the use of explosive devices to be used by police in executing any warrant. Flash bangs are explosive devices intended to disorient individuals and are designed to produce a blinding flash of light (here two flash bangs were deployed) and an intensely loud "bang" of greater than 170 decibels. The flash is blinding for several seconds, impairing an individual's vision as well as perception, while the volume of the detonation causes temporary

deafness and a loss of balance. At least two flash bang grenades were thrown into Duncan Lemp's bedroom. It would have prevented him from seeing, hearing, or understanding that police officers were coming into the house, or likely led him to mistaking believe the persons outside the house were home invaders. Any judge would realize that if the warrant was executed in this manner, he or she would not authorize a no-knock warrant in advance.

11. Although the police investigation revealed numerous opportunities to arrest Duncan Lemp outside of his parents' home, the defendant police officers chose to execute the no-knock warrant at 4:30 a.m. on March 12, 2020, a time when they knew the Lemp family would be sleeping upstairs. Acting under the leadership of Officer Jordan Satinsky, members of the SWAT team, including Officer Majkrzak, positioned themselves outside of Duncan Lemp's bedroom window at the front of the house. They used a "break and rake" tactic (which initially failed), causing a loud noise against the frame of the window outside the house, which was then followed by a second loud breaking of the window. This allowed the officers an open space in the window so that the blinds could be moved out of the way. Officer Majkrzak or another officer forthwith threw a stun grenade into Duncan's bedroom. It exploded. Both Kasey and Duncan experienced the blinding light and deafening explosion. Duncan grabbed a firearm and took a standing position on the other side of the bed from the front window. Within seconds, Officer Majkrzak, without waiting for any response, such as a peaceful surrender by Duncan Lemp, shot his high-powered firearm five times at Duncan Lemp from outside of the house through the open bedroom window. Lemp's body jerked as three of the bullets struck him. He fell down on the floor close in proximity to the doors in the common wall between Duncan's bedroom and the rest of the house.

12. At this point, several SWAT officers came through a door in which Duncan Lemp was in close proximity. One of the officers stepped on Duncan's throat with his boot. Kasey protested and the officer removed his foot from Duncan's throat.

13. Duncan continued to breath for several minutes and groaned. His eyes remained open. No police officer rendered aid to him. It took approximately 15-20 minutes before an ambulance arrived.

**Injuries and Damages**

14. Duncan Lemp experienced significant conscious pain and suffering, physical and mental, prior to his death. He also would have been conscious of his impending demise. He was pronounced dead at 4:55 a.m. on March 12, 2020.

15. Kasey Robinson moved to Duncan to render assistance. In so doing, her hands and right knee sustained lacerations from broken glass distributed over the floor. She experienced mental trauma from the assault by Officer Majkrzak discharged his firearm in her direction and put her in fear of being shot. She has suffered from posttraumatic stress and severe emotional distress since the events of March 12, 2020, and she has expended sums of money for a diagnosis and treatment of her condition and distress. She was detained many hours by the police for questioning.

16. Maria was in the basement sleeping at the time the police entered the house. She heard a loud noise coming from Duncan's bedroom. She ran up the steps and saw police officers. She saw that the officers had entered through the front door of the house and were then heading toward the door in an attempt to enter Duncan's bedroom. She offered to get her son for the officers, but they rejected her offer. She was escorted by officers into another room. Matthew Lemp and Maria Lemp have experienced mental anguish and emotional pain and

distress from the violent entry by the police on the morning of March 12, 2020. They have expended sums of money for mental health therapy and medical care, including medications. They also have experienced long suffering grief over their son's death. They have endured and will continue to endure the loss of their son's love, society, companionship, affection, comfort, protection, filial care, attention, advice, counsel, and guidance.

17. ███████████████ was born on October 14, 2020. The father of ████ is Duncan Lemp. Had he lived, he would have been able to provide his son with substantial economic support during childhood. Since birth, ████ has been deprived of his father's love, society, companionship, affection, comfort, protection, parental care, attention, advice, and counsel.

**Count Two – 42 U.S.C. § 1983 – Monell Claim Against Montgomery County**

18. The allegations of Count One are incorporated by reference as though fully set forth.

19. Prior to March 12, 2020, Montgomery County developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of citizens in Montgomery County subjected to no-knock searches.

20. Too long have the civil authorities in Montgomery County failed to develop adequate policies to curtail unannounced SWAT entries into the home at night. This has been in the face of evidence that nighttime no-knock SWAT entries are fraught with danger and resulting loss of life. This unfortunate loss of life occurred regularly throughout Maryland and in the United States in general with the advent the federal government's transfer of military equipment to local police departments. It is so obvious that for Montgomery to do nothing to stop the practice, it amounts to a well-entrenched custom and policy.

21. In addition, the SWAT team in Lemp's case did not have body cameras. This is inexcusable. It makes a controversial shooting into a credibility contest when it should not be. This should have been addressed long before Duncan Lemp's case, as the rest of the department has mandated body cameras for patrol officers for a long time prior to the Lemp shooting.

**Count Three– Maryland Constitutional Claims.**

Plaintiffs incorporate by reference that the allegations of Count One.

22. The actions and conduct of the defendant police officers were committed within the scope of their employment for Montgomery County.

23. The actions and conduct of the defendants as alleged in Counts One and Two violated

24. Article 26 of the Maryland Declaration of Rights.

**Court Four – Intentional Infliction of Emotional Distress**

Plaintiff incorporate by reference the allegations of Count One.

25. The defendant police officers acted to intentionally inflict severe emotional distress upon the individual plaintiffs who resided in the Lemp home, including Kasey Jean Robinson.

26. The defendants' conduct in breaking windows and setting off stun grenades may be suitable in a war zone, but not in the United States. It was outrageous and legally inexcusable. It caused the plaintiffs to experience fear and severe emotional distress.

WHEREFORE, plaintiffs request this Court:

a. Award compensatory damages to plaintiffs against the Defendants;

b. Award punitive damages to plaintiffs against the Defendant officers;

c. Award reasonable attorney's fees and costs to the plaintiffs under 42 U.S.C.

§1988.

                              Respectfully submitted,
                              **ROBERTS AND WOOD**

                              /s/ *Terrell N. Roberts, III*
                              Terrell N. Roberts, III
                              Bar ID No. 01091
                              *Attorney for Plaintiffs*
                              6801 Kenilworth Avenue, Suite 202
                              Riverdale, Maryland 20737
                              (301) 699-0764
                              (301) 699-8706 Fax
                              troberts@robertsandwood.com

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

                              /s/ *Terrell N. Roberts, III*
                              Terrell N. Roberts, III