## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARIA MERCEDES LEMP, *et al.*,      *

 Plaintiffs,      *

v.      *      Civ. No. MJM-23-691

OFFICER MATTHEW MAJKRZAK, *et al.*, *

Defendants.      *

\* \* \* \* \* \* \*

## MEMORANDUM ORDER

This matter is before the Court on Officer Majkrzak's Partial Motion to Dismiss (ECF 42) and Defendants' Motion to Bifurcate Plaintiffs' Monell Claim in Count Seven for Discovery and Trial (ECF 41). No hearing is necessary to resolve the motions. *See* Loc. R. 105.6 (D. Md. 2025). For reasons explained herein, Officer Majkrzak's motion for partial dismissal is GRANTED, and Defendants' motion to bifurcate is DENIED without prejudice.

### I.      BACKGROUND

Plaintiffs Maria Mercedes Lemp, individually and as personal representative of the Estate of Duncan Lemp; Kasey Jean Robinson, individually and as parent and guardian of Duncan Lemp's minor child; and Matthew Lemp (collectively, "Plaintiffs") assert claims in a Second Amended Complaint against Montgomery County and Officer Majkrzak arising from an incident that resulted in the death of Duncan Lemp. ECF 39 ("SAC"). Plaintiffs allege that in the early morning of March 12, 2020, a Montgomery County Police Department ("MCPD") SWAT team conducted a raid at their residence in Potomac, Maryland that killed resident Duncan Lemp (hereinafter, "Mr. Lemp"). SAC ¶ 5. The raid was conducted pursuant to a no-knock search warrant on the basis of Mr. Lemp's suspected unlawful possession of firearms. *Id.* ¶ 6. During the execution

1

of the warrant, the police threw a flashbang into Mr. Lemp's bedroom, disorienting him and his fiancée, Kasey Robinson. *Id.* ¶ 12. Mr. Lemp then brandished a gun and took a "standing position," at which point Officer Majkrzak shot him five times through the window. *Id.* ¶¶ 11–12. Ms. Robinson was pregnant at the time of the raid and gave birth to Mr. Lemp's child (the "Minor Child") in October 2020. *Id.* ¶¶ 5, 18. Plaintiffs allege that, in March 2020, Montgomery County policymakers failed to develop and maintain policies to avoid unreasonable searches pursuant to no-knock warrants, which created substantial risks to the safety, lives, property, and privacy of Montgomery County residents. *Id.* ¶¶ 36–40.

Defendants filed a motion for partial dismissal of the claims against Officer Majkrzak in Counts Three and Seven of the SAC. ECF 42, 42-1. In Count Three, Ms. Robinson asserts a claim of wrongful death against Officer Majkrzak under 42 U.S.C. §§ 1983 and 1988, on behalf of the Minor Child. In Count Seven, Plaintiffs assert a *Monell* claim against Montgomery County and Officer Majkrzak. Plaintiffs filed a response to Defendants' motion for partial dismissal, opposing dismissal of Count Three while conceding dismissal of Count Seven as to Officer Majkrzak. ECF 47.

Defendants also filed a motion to bifurcate the *Monell* claim in Count Seven for discovery and trial. ECF 41. Plaintiffs filed a response in opposition to this motion, ECF 46, and Defendants filed a reply, ECF 48.

## II.     MOTION FOR PARTIAL DISMISSAL

### A. Standard of Review

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City*

*Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed in one of two ways: either a facial challenge ... or a factual challenge." *Id.* (citations omitted) (internal quotations omitted). A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A defendant's facial challenge "will be evaluated in accordance with the procedural protections afforded under Rule 12(b)(6), which is to say that the facts alleged in the Complaint will be taken as true . . . ." *In re Jones v. Md. Dept. of Pub. Safety*, Civ. No. JRR-21-01889, 2024 WL 493269, at *3 (D. Md. Feb. 8, 2024).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

3

### B. Count Three

In Count Three of the SAC, Ms. Robinson, as parent of the Minor Child, asserts a claim for wrongful death against Officer Majkrzak under 42 U.S.C. §§ 1983 and 1988, "borrowing" Md. Code Ann., Cts. & Jud. Proc. § 3-904. In support of Count Three, Plaintiffs allege that Officer Majkrzak, "acting under color of law, violated Duncan Lemp's rights under the Fourth Amendment by using excessive and unreasonable force against Duncan Lemp[,]" and that the Minor Child suffered losses from Mr. Lemp's death. SAC ¶¶ 18, 25, 26. Specifically, the Minor Child lost "substantial economic support" Mr. Lemp would have provided had he lived, and "has been deprived of his father's love, society, companionship, affection, comfort, protection, parental care, attention, advice, and counsel." *Id.* ¶ 18.

Defendants argue that Ms. Robinson, in her capacity as the Minor Child's guardian, lacks standing to bring suit under Count Three. "Plaintiffs bringing claims in federal court must meet the requirements of standing in order for the court to exercise subject-matter jurisdiction." *Doe v. Obama*, 670 F. Supp. 2d 435, 438 (D. Md. 2009), *aff'd*, 631 F.3d 157 (4th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To demonstrate they have standing under Article III of the U.S. Constitution, "[p]laintiffs bear the burden of establishing . . . (1) injury in fact; (2) causation; and (3) redressability." *Id.* (citing *Lujan*, 504 U.S. at 561–62). Defendants point out "the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). Thus, the Minor Child may not seek redress for violations of his father's Fourth Amendment rights and therefore lacks standing to bring a claim for relief founded upon those constitutional violations.

Plaintiffs argue that Maryland's wrongful death statute, Md. Code Ann., Cts. & Jud. Proc. § 3-904, confers standing upon the Minor Child by providing a remedy for damages that *he* suffered as a result of his father's wrongful death. ECF 19 at 3 (incorporated into ECF 47). Section 3-904 provides a remedy "for the benefit of the wife, husband, parent, and child of the deceased person" in an award of damages "proportioned to the injury resulting from the wrongful death." Md. Code Ann., Cts. & Jud. Proc. § 3-904(a)(1), (c)(1). In addition to pecuniary loss, a beneficiary may recover "damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable for the death of . . . [a] parent of a minor child[.]" *Id.* § 3-904(d)(3). Plaintiffs contend that this state-law remedy may be "borrowed" by the Minor Child's 42 U.S.C. § 1983 cause of action via 42 U.S.C. § 1988. ECF 19 at 2–4.

Section 1988 provides:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988(a). "This statute recognizes that in certain areas federal law is unsuited or insufficient 'to furnish suitable remedies; federal law simply does not cover every issue that may

arise in the context of a federal civil rights action." *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978) (quoting *Moor v. County of Alameda*, 411 U.S. 693, 703 (1973)) (internal quotation marks omitted). Importantly, however, § 1988 was not intended "to authorize the wholesale importation into federal law of state causes of action[]—not even one purportedly designed for the protection of federal civil rights." *Moor*, 411 U.S. 693, 703–04 (footnote omitted).

To fill gaps in "[t]he century-old Civil Rights Acts[,]" § 1988 prescribes "a three-step process to borrow an appropriate rule." *Burnett v. Grattan*, 468 U.S. 42, 47–48 (1984). "[O]ne specific area not covered by federal law is that relating to 'the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant.'" *Robertson*, 436 U.S. at 589 (quoting *Moor*, 411 U.S. at 702 n.14). "State statutes governing the survival of state actions do exist, however[,]" and "provide[] the principal reference point in determining survival of civil rights actions, subject to the important proviso that *state law may not be applied when it is 'inconsistent with the Constitution and laws of the United States.'" Id.* at 589–90 (quoting 42 U.S.C. Sec. 1988) (emphasis added).

To this Court's knowledge, the U.S. Court of Appeals for the Fourth Circuit has not addressed whether § 1988 permits a § 1983 claim to borrow a state-law wrongful death remedy, as Plaintiffs assert in Count Three. *See Bost v. Wexford Health Sources, Inc.*, Civ. No. ELH-15-3278, 2021 WL 1251880, at *11 (D. Md. Apr. 5, 2021). Views among other courts on this issue diverge. *See Carringer v. Rodgers*, 331 F.3d 844, 850 n.9 (11th Cir. 2003) (describing varying holdings among the courts).

To determine the availability of Maryland's statutory wrongful death remedy for the Minor Child's § 1983 claim, the Court must follow the three-step process delineated by the Supreme Court in *Burnett*:

> First, courts are to look to the laws of the United States "so far as
> such laws are suitable to carry [the civil and criminal civil rights
> statutes] into effect." . . . If no suitable federal rule exists, courts
> undertake the second step by considering application of state
> "common law, as modified and changed by the constitution and
> statutes" of the forum State. Ibid. A third step asserts the
> predominance of the federal interest: courts are to apply state law
> only if it is not "inconsistent with the Constitution and laws of the
> United States."

*Burnett*, 468 U.S. at 47–48 (citations omitted).

The first two steps of the analysis are straightforward in this case. First, federal law does not contain any provision for recovery by the Minor Child for the wrongful death of Mr. Lemp. Section 1983 provides a cause of action for a party injured when a person acting under color of state law subjects them to a deprivation of federal rights. 42 U.S.C. § 1983. Federal law does not supply a remedy for injuries suffered by the child of the injured party when the deprivation results in death. *See Robertson*, 436 U.S. at 589 (quoting *Moor*, 411 U.S. at 702 n.14). Second, the forum state here, Maryland does have a wrongful death statute that provides a remedy for children to recover from the wrongful death of a parent: Md. Code Ann., Cts. & Jud. Proc. § 3-904.

This Court finds, however, that Plaintiffs' argument falters at the third step of the analysis. The Eighth Circuit examined in this issue in *Andrews v. Neer*, noting, first, disagreement among the federal courts of appeal regarding whether surviving family members may "collect damages on their own behalf in a § 1983 claim for the wrongful death of another." 253 F.3d 1052, 1063 (8th Cir. 2001). After assessing the prevailing competing views on the matter, the Eighth Circuit agreed with the Tenth Circuit's reasoning in *Berry v. City of Muskogee*:

> In *Berry v. City of Muskogee,* 900 F.2d 1489, 1506 (10th Cir.1990),
> the Tenth Circuit held the court could not supplement the damages
> available to the plaintiff under the state survival statute with those
> available under the state wrongful death statute. The court reasoned
> that the wrongful death statute allowed collection of damages for

7

> items that the "decedent could not have recovered had he lived to
> sue for himself," such as loss of companionship and grief. *Id.* Thus,
> the court concluded that borrowing the damages available in the
> wrongful death statute would be "inconsistent with the
> predominance of the federal interest," and therefore would fail to
> satisfy the § 1988 criteria for borrowing state law. *Id.*

*Andrews*, 253 F.3d at 1063–64.

The same is true of Maryland's wrongful death statute; it allows certain surviving family members to collect a range of damages that the "decedent could not have recovered had he lived to sue for himself[.]" *Berry*, 900 F.2d at 1056; *see also* Md. Code Ann., Cts. & Jud. Proc. § 3-904(d). As the *Andrews* court concluded, for a court to permit the measure of damages in a § 1983 suit "to be entirely defined by the language of the [state] wrongful death statute . . . would impermissibly broaden the types of injuries for which Congress intended recovery to be available under § 1983's authorization of liability 'to the party injured.'" 253 F.3d at 1064 (quoting 42 U.S.C. § 1983). This Court agrees with the Eighth Circuit and the Tenth Circuit that to permit recovery under § 1983 for the Minor Child's injuries from Mr. Lemp's wrongful death would be inconsistent with federal law and subvert "the predominance of the federal interest[.]" *Burnett*, 468 U.S. at 47–48.

Accordingly, the Court finds that Ms. Robinson, on behalf of the Minor Child, cannot bring suit under §§ 1983 and 1988 to recover damages for wrongful death prescribed by Maryland law. Therefore, Count Three of the Second Amended Complaint fails to state a legally cognizable claim for relief and must be dismissed.

### C. Count Seven

Officer Majkrzak argues that the *Monell* claim in Count Seven are solely against Montgomery County, and he should not be identified as a defendant to that count. ECF 42. Plaintiffs do not object to the dismissal of Officer Majkrzak from Count Seven. ECF 47. Count

Seven only alleges misconduct by Montgomery County and its policy makers. Accordingly, Officer Majkrzak will be dismissed from this count.

### III.    MOTION TO BIFURCATE COUNT SEVEN FOR DISCOVERY AND TRIAL

Rule 42(b) provides that "district courts may bifurcate claims to (1) promote convenience, (2) avoid prejudice, or (3) expedite and economize the judicial proceedings." *Palma v. Montgomery County, Maryland*, 598 F. Supp. 3d 288, 299 (D. Md. 2022). "Only one of these criteria need be met to justify bifurcation." *Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 458 (D. Md. 2020). The party seeking bifurcation bears the burden of proving bifurcation necessary. *See Palma*, 598 F. Supp. 3d at 299. "District courts have 'broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused.'" *Johnson*, 500 F. Supp. 3d at 458 (citation omitted); *see also Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 782 (4th Cir. 1997) (decisions to bifurcate are reviewed for abuse of discretion). The determination must be made on a case-by-case basis. *See Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) (observing that "[e]ach case must be considered in light of its particular facts and circumstances.").

Courts have found motions to bifurcate to be premature where the determination requires greater information than commonly available at the outset. *See Noel v. Artson*, Civ. No. WMN-06-2069, 2006 WL 8427663, at *2 (D. Md. Nov. 1, 2006) (denying motion to bifurcate but allowing that "[p]erhaps, after dispositive motions are presented and resolved, the particular facts in this action might lead the Court to conclude that bifurcation at the trial phase is warranted."); *Johnson*, 500 F. Supp. 3d at 462–64 (finding that the "bifurcation of trial is premature" because "[b]oth sides offer more by way of prediction and speculation than concrete assertions about the facts of this case").

Having reviewed the pleadings filed so far in this case, the Court finds Defendants' motion to bifurcate to be premature in the circumstances. Officer Majkrzak has not yet filed a responsive pleading. The scope of discovery as it relates to the claims against Officer Majkrzak is unclear, as are Officer Majkrzak's defenses to those claims. For these reasons, the Court cannot make a reliable assessment of whether bifurcation would serve the interests of convenience and judicial efficiency or prejudice any party. Accordingly, Defendants' motion to bifurcate is denied without prejudice to renewal. The Court intends to conduct a scheduling conference with counsel for the parties after the pleadings are complete and will entertain renewal of the motion, whether orally or in writing, at that time.

## IV.    CONCLUSION

For the foregoing reasons, it is by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Officer Majkrzak's Partial Motion to Dismiss (ECF 42) is GRANTED;

2. Count Three of the Second Amended Complaint is DISMISSED without prejudice;

3. Count Seven of the Second Amended Complaint is DISMISSED with prejudice as to Officer Majkrzak;

4. Defendants' Motion to Bifurcate Plaintiffs' Monell Claim in Count Seven for Discovery and Trial (ECF 41) is DENIED without prejudice.

It is so ORDERED this  30th  day of September, 2025.

                    /S/
                    Matthew J. Maddox
                    United States District Judge